1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   IMMIGRANT LEGAL RESOURCE                No.  1:20-cv-00966-TLN-AC
     CENTER; and FREEDOM FOR
12   IMMIGRANTS,

13            Petitioners,

14        v.                                  **ORDER**

15
     CITY OF MCFARLAND; and
16   MCFARLAND PLANNING
     COMMISSION,
17
              Respondents,
18

19   GEO GROUP, INC.,

20            Real Party in Interest,

21

22

23        This matter is before the Court on Petitioners Freedom for Immigrants and Immigrant

24   Legal Resource Center's (collectively, "Petitioners") *Ex Parte* Motion for Temporary Restraining

25   Order and Order to Show Cause.  (ECF No. 3.)  For the reasons set forth below, the Court

26   GRANTS Petitioners' motion.

27   ///

28
                                          1

1

## I.    Factual and Procedural Background

In December 2019, Geo Group, Inc. ("GEO") contracted with United States Immigration and Customs Enforcement ("ICE") to operate immigration detention facilities at Central Valley ("Central Valley") and Golden State ("Golden State") Modified Community Correctional Facilities in McFarland, California.  (ECF No. 3-1 at 8.)  Shortly thereafter, GEO applied to the City of McFarland Planning Commission ("the Planning Commission") for modifications to Conditional Use Permits 01-96 and 02-96 ("Proposed Modifications") that would allow GEO to house federal immigration detainees at those facilities.  (*Id.*)

The Planning Commission first notified the public of the Proposed Modifications on January 10, 2020.  (*Id.*)  The Planning Commission also held two hearings concerning the Proposed Modifications: the first on January 21, 2020, and the second on February 18, 2020.  (*Id.*)  At the end of the February 18 meeting, the Planning Commission voted to reject the Proposed Modifications.  (*Id.* at 9.)

On February 26, 2020, GEO appealed the Planning Commission's decision to the McFarland City Council ("City Council").  (*Id.*)  The City Council held a public meeting to address the issue on April 23, 2020.  (*Id.*)  Due to the COVID-19 pandemic, the City Council held the meeting via videoconference on the Zoom platform and via dial-in.  (*Id.*)  During the meeting, the City Council approved the Proposed Modifications by adopting Resolutions 2020-13 and 2020-14.  (*Id.*)  Resolutions 2020-13 and 2020-14 provide that the Proposed Modifications shall not be considered "issued, executed, or effective until July 15, 2020."  (*Id.*)  After that date, the Proposed Modifications will allow GEO to accept transfers of federal immigration detainees to Central Valley and Golden State.  (*Id.* at 10.)

On June 30, 2020, Petitioners filed a Verified Petition for Writ of Mandate in Kern County Superior Court seeking to compel Respondents to revoke approval of the Proposed Modifications.  (*See* ECF No. 1-2.)  Petitioners named the City of McFarland ("the City") and the Planning Commission (collectively, "Respondents") as Respondents and GEO as a Real Party in Interest.  (*Id.*)  On July 10, 2020, Petitioners filed an *ex parte* application for a temporary restraining order in state court to enjoin the transfer of detainees, which would be permissible

2

under the Resolutions as of July 15, 2020.  (*See* ECF Nos. 1-3, 1-4.)  That same day, GEO

removed the action to this Court.  (*See* ECF No. 1.)  Petitioners filed the instant *Ex Parte* Motion

for a Temporary Restraining Order on July 12, 2020.  (ECF No. 3.)  Neither Respondents nor Geo

have filed an opposition.[1]

## II.   STANDARD OF LAW

A temporary restraining order is an extraordinary remedy.  The purpose of a temporary

restraining order is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In

general, "[t]emporary restraining orders are governed by the same standard applicable to

preliminary injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL

406092 at *1 (E.D. Cal. Jan. 29, 2010); *see also* L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The

purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)

(emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal.

App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final

determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt

Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to

any situation before the filing of a lawsuit, but instead to the last uncontested status which

preceded the pending controversy.") (internal quotation marks omitted).  In cases where the

movant seeks to alter the status quo, a preliminary injunction is disfavored and a higher level of

---

[1]      The Court is acutely aware of — and indeed frowns upon — the timing of Petitioners'
Motion and the impact it had on Respondents' ability to file a thoughtful opposition.  The Court is
also aware of GEO's desire to oppose the instant Motion and email request for time to do so.  The
purpose of an *ex parte* temporary restraining order, however, is to maintain the status quo pending
such fuller briefing.  GEO's request that the Court defer ruling on the instant Motion is therefore
DENIED.  The Court GRANTS Petitioners' Motion for TRO based on the limited briefing before
it and understanding that Respondents and GEO will have an opportunity to oppose Petitioners'
longer-term request for preliminary injunction.

1   scrutiny must apply.  *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005).  A

2   preliminary injunction is not automatically denied simply because the movant seeks to alter the

3   status quo, but instead the movant must meet heightened scrutiny.  *Tom Doherty Associates, Inc.*

4   *v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

5          "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

6   on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

7   [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

8   *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test

9   to obtain a preliminary injunction.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135

10   (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court may

11   weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A

12   stronger showing on the balance of the hardships may support issuing a preliminary injunction

13   even where the plaintiff shows that there are "serious questions on the merits . . . so long as the

14   plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

15   public interest."  *Id.*  Simply put, Plaintiff must demonstrate, "that [if] serious questions going to

16   the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's

17   favor," in order to succeed in a request for preliminary injunction.  *Id.* at 1134–35 (emphasis

18   added).

19       **III.**   **ANALYSIS**

20           A.   <u>Likelihood of Success on the Merits</u>

21          The thrust of Petitioners' argument is that the City unlawfully approved the Proposed

22   Modifications.  More specifically, Petitioners argue Respondents violated California Civil Code §

23   1670.9(d) ("§ 1670.9(d)"), which provides,

24              (d)  A city, county, city and county, or public agency shall not, on
           and after January 1, 2018, approve or sign a deed, instrument, or

25              other document related to a conveyance of land or issue a permit for
           the building or reuse of existing buildings by any private corporation,

26              contractor, or vendor to house or detain noncitizens for purposes of
           civil immigration proceedings unless the city, county, city and

27              county, or public agency has done both of the following:

28

1

2  (1)  Provided notice to the public of the proposed conveyance
or permitting action at least 180 days before execution of the

3  conveyance or permit.

4  (2)  Solicited and heard public comments on the proposed
conveyance or permit action in at least two separate meetings

5  open to the public.

6

7    Petitioners argue Respondents violated § 1670.9(d) in three ways.  First, Petitioners argue

8 that proper interpretation of § 1670.9(d) requires each public body considering any action

9 pertaining to an immigration detention facility to provide 180 days' notice and to hold at least two

10 public meetings before approving the action.  In other words, Petitioners argue that even though

11 the Planning Commission held two public meetings, the City Council was also required to

12 independently hold two public meetings once the matter was before it.  Petitioners argue the City

13 Council violated §1670.9(d) by holding only one meeting before approving the Proposed

14 Modifications on April 23, 2020.

15    Second, Petitioners argue the City Council "executed" the Proposed Modifications on

16 April 23, 2020, which was less than 180 days from when the public was first notified as required

17 under § 1670.9(d).  Petitioners argue it is improper to consider the Proposed Modifications

18 "executed" when they become effective on July 15, 2020, primarily because doing so undermines

19 the statute's purpose of maximizing public participation by allowing permitting decisions to be

20 formally approved months before that permit's effective date.

21    Third, Petitioners argue both the Planning Commission and the City Council

22 impermissibly restricted public participation during the public meetings.  More specifically,

23 Petitioners argue the City capped videoconference attendance for the City Council meeting at 100

24 participants even though the Zoom platform permits up to 1,000 attendees and between 200–300

25 members of the public had attended the previous Planning Commission meetings on the issue.

26 Petitioners also file declarations from attendees who claim they were wrongly prohibited from

27 commenting or were unable to connect either through dial-in or videoconference.  In addition,

28 Plaintiffs take issue with the Planning Commission meetings, arguing that members of the public

1  were required to fill out comment cards and identify themselves by name, which Petitioners argue

2  were impermissible restrictions to public participation.

3         Petitioners raise several novel issues.  Indeed, the Court is unable to locate any instance

4  where any other court has interpreted § 1670.9(d).  The Court finds that Petitioners' arguments at

5  the very least raise serious questions about the proper interpretation of § 1670.9(d) and the

6  procedural requirements therein.  For example, the disjunctive use of the word "or" when listing

7  "city, county, city and county, or public agency" supports a reasonable interpretation that each

8  separate municipal body considering a permitting decision must independently satisfy §

9  1670.9(d).  *See Monsanto Co. v. Off. of Envtl. Health Hazard Assessment*, 22 Cal. App. 5th 534,

10  555–56 (2018) (use of disjunctive creates "sweeping" statutory coverage).  Similarly, it is also

11  reasonable to interpret "execution" of a permit to take place upon approval by a municipal body,

12  especially when considering that allowing a municipal body to postdate the effective date of its

13  decisions could undercut § 1670.9(d)'s notice requirement.  *Comm. for Responsible Sch.*

14  *Expansion v. Hermosa Beach City Sch. Dist.*, 142 Cal. App. 4th 1178, 1189 (2006) ("Courts

15  should interpret statutes . . . so as to give force and effect to every provision.").  Lastly, it is

16  arguable that the City Council's use of dial-in and videoconferencing — specifically the alleged

17  cap on attendance/comment and connection issues — was inadequate in these unprecedented

18  times where new measures for public participation have suddenly become necessary.  *See* Cal.

19  Exec. Order No. N-29-20 at 2–4 (suspending the physical presence requirement for public

20  meetings due to the COVID-19 pandemic but urging public bodies "to adhere as closely as

21  reasonably possible" to the provisions of the Brown Act); *see also* Cal. Gov. Code § 54954.3(a);

22  Cal. Civ. Code § 1670.9(d)(2) (requiring that members of the public be "solicited and heard").  In

23  sum, each of these arguable defects in the City's approval process are sufficient to raise "serious

24  questions going to the merits" of Petitioners' claims.  *See Alliance*, 632 F.3d at 1134–35.

25                B.    Irreparable Harm

26         As to irreparable harm, the Court finds Petitioners have adequately demonstrated a

27  likelihood of imminent and irreparable harm absent injunctive relief.  More specifically,

28  Petitioners argue the Court should enjoin the Proposed Modifications from taking effect due to

6

1  the immediate and extreme risks to public health posed by transferring detainees during the

2  COVID-19 pandemic, which transfer would be possible as of July 15, 2020.

3          As a general matter, the Court is well aware that the COVID-19 pandemic poses grave,

4  unprecedented, and rapidly evolving risks to the public health, and it is in the public interest to

5  reduce those risks as much possible.  To support their argument that those risks are even greater

6  within the context of detainee transfers, Petitioners cite the California Department of Health's

7  statement that Kern County "is experiencing elevated disease transmission and increasing

8  hospitalization" in part due to "outbreaks at . . . state/federal prisons."  (ECF No. 3-2 at 135.)

9  Petitioners also cite statistics published by ICE showing there are currently hundreds of active

10  COVID-19 cases at various ICE facilities.  (*Id.* at 82–86.)  Finally, Petitioners emphasize that

11  federal and state authorities have cited detainee transfers as an avoidable risk and have cautioned

12  against them or temporarily suspended them.  (*See id.* at 103 (CDC recommendation that

13  detention facilities "restrict transfers of incarcerated/detained persons to and from other

14  jurisdictions and facilities unless necessary")); (*see id.* at 122–23 (ordering temporary suspension

15  of transfers at California detention facilities)).[2]  For these reasons, the Court finds Petitioners

16  have demonstrated that preventing detainee transfers is an effective method for reducing

17  unnecessary risks to public health related to COVID-19, and that absent an injunction, there is an

18  imminent threat of irreparable harm resulting from detainee transfers.

19                    C.      Balance of Equities and Public Interest

20          Having found there are serious questions going to the merits of Petitioners' claims and a

21  likelihood of irreparable harm absent an injunction, Petitioners must demonstrate the balance of

22  hardships tips sharply in their favor.  *See Alliance*, 632 F.3d at 1134–35.  The Court finds

23  _____

24  [2]        Petitioners request the Court take judicial notice of several documents, including government-compiled statistics from the California Department of Health (ECF No. 3-2 at 133,

25  Exh. P) and ICE (*Id.* at 81, Exh. J), CDC guidance (*Id.* at 94, Exh. L), and a California executive order (*Id.* at 121, Exh. M).  (*See generally* ECF No. 3-3.)  Pursuant to Federal Rule of Evidence

26  201, Petitioners' request is GRANTED.  The facts relied on in the aforementioned documents are not subject to reasonable dispute because they can be accurately and readily determined from

27  sources whose accuracy cannot reasonably be questioned.  As for the other documents included in Petitioners' request, the Court did not rely on such facts or documents and therefore need not and

28  does not rule on Petitioners' request for judicial notice thereof.

1    Petitioners have met their burden.

2        As explained above, the hardship to Petitioners absent an injunction is potentially severe.

3    In contrast, Petitioners argue neither Respondents nor GEO have cognizable interests that could

4    outweigh the risks to public health.  The Court agrees.  It is unclear what harm, if any,

5    Respondents would suffer as a result of granting Petitioners' motion.  As for GEO, the Court

6    finds that the potential financial burdens to GEO do not outweigh the gravity of the risks to the

7    public health by allowing the transfers to proceed.  Moreover, the risk to the public will be

8    doubled if the Court ultimately finds the Proposed Modifications violated § 1670.9(d) and must

9    again transfer the detainees.  On the other hand, should the Court ultimately find the Proposed

10   Modifications to be lawful, transfer of detainees could proceed at that time.  For these reasons, the

11   Court finds the balance of hardships tips sharply in Petitioners' favor.  *See Alliance*, 632 F.3d at

12   1135.  And for the same reasons, the public interest factor weighs strongly in favor of granting an

13   injunction.

14       **IV.   CONCLUSION**

15       For the reasons set forth above, Petitioners' Motion for Temporary Restraining Order

16   (ECF No. 3) is GRANTED.

17       Respondents City of McFarland and City of McFarland Planning Commission ARE

18   HEREBY RESTRAINED AND ENJOINED from taking any action to issue, execute, or make

19   effective the modifications to Conditional Use Permits 01-96 and 02-96 approved by the City

20   Council on April 23, 2020 in which the following text was approved for both conditional use

21   permits: "The facility may house Federal inmates and detainees, both male and/or female."

22   Additionally, Real Party in Interest Geo Group, Inc. ("GEO"), GEO's employees, agents, assigns,

23   and any other persons acting on GEO's behalf ARE HEREBY RESTRAINED AND ENJOINED

24   from transferring any detainee into or out of, and accepting any transfer of any detainee into or

25   out of, and housing any detainee at, the Central Valley Modified Community Correctional

26   Facility or the Golden State Modified Community Correctional Facility in reliance on the

27   modifications to Conditional Use Permits 01-96 and 02-96 approved by the City Council on April

28   23, 2020 in which the following text was approved for both conditional use permits: "The facility

1    may house Federal inmates and detainees, both male and/or female."

2          IT IS FURTHER ORDERED THAT Respondents City of McFarland/City of McFarland

3    Planning Commission and Real Party in Interest GEO are hereby ORDERED TO SHOW

4    CAUSE in writing as to why a preliminary injunction should not issue enjoining such conduct

5    and actions pending resolution of this lawsuit, to be filed not later than seven (7) days of the

6    electronic filing of this Order.  Petitioners shall file a reply not later than three (3) days after the

7    deadline for filing the Orders to Show Cause.  The temporary restraining order as set forth above

8    will remain in effect until the Court's ruling on the preliminary injunction.

9          Lastly, no bond is required to be posted by Petitioners as a condition for the issuance of

10   this relief.

11         IT IS SO ORDERED.

12   DATED:  July 14, 2020

13

14

15                                          Troy L. Nunley
                                            United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28