Bob H. Joyce (SBN 84607)
Andrew K. Sheffield (SBN 220735)
LAW OFFICES OF
LeBeau • Thelen, LLP
5001 East Commercenter Drive, Suite 300
Post Office Box 12092
Bakersfield, California  93389-2092
(661) 325-8962; Fax (661) 325-1127

Attorneys for Respondent CITY OF McFARLAND

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRANT LEGAL RESOURCES CENTER; and FREEDOM FOR IMMIGRANTS,<br><br>Petitioners,<br><br>vs.<br><br>CITY OF MCFARLAND; and MCFARLAND PLANNING COMMISSION,<br><br>Respondents,<br><br>GEO GROUP, INC.,<br><br>Real Party in Interest, | Case No.:  1:20-CV-00966-TLN-AC<br><br>**RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION**<br><br>**Judge: Hon. Troy L. Nunley** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Petitioners Immigrant Legal Resources Center and Freedom for Immigrants ("Petitioners") have failed to meet their burden for obtaining a preliminary injunction because they failed to: 1) demonstrate a likelihood of success on the merits, 2) prove likelihood of irreparable harm, 3) show that the balance of equities tips in their favor, and 4) show that issuance of the requested injunction would be in the public interest.

Petitioners' main claim for injunctive relief is that the City unlawfully approved GEO's conditional use permits in violation of California Civil Code section 1670.9(d).  In this matter, the

0357629;1}

1  City's actions complied with all requisite elements of § 1670.9(d) because the City 1) held at least

2  two public meetings, 2) provided more than 180 days' notice to the public, and 3) heard public

3  comments before approving the permits.  The City's planning commission is not an independent

4  public agency, but rather is a creature of the City.  Petitioners' request for a preliminary injunction

5  should be denied.

6                          II.    **LAW AND ARGUMENT**

7            Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

8  showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555

9  U.S. 7, 22 (2008) (*Winter*).  "A plaintiff seeking a preliminary injunction must establish [1] that he

10  is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

11  preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

12  the public interest. *Winter*, 555 U.S. at 20.

13            When considering a plaintiff's request for a preliminary injunction, a district court may

14  also apply the "serious questions" test, which is a "sliding scale" approach to preliminary

15  injunctions. *Alliance for the Wild Rockies v. Cottrell* 632 F.3d 1127, 1131 (9th Cir. 2011).  A

16  preliminary injunction could issue pursuant to this approach when a plaintiff shows "that serious

17  questions going to the merits were raised and the balance of hardships tips sharply in the

18  plaintiff's favor." *Id*. at 1135.  "Of course, Petitioners must also satisfy the other *Winter* factors"

19  and must "make a showing on all four prongs." *Id*.  Thus, Petitioners must also show that there is

20  a likelihood of irreparable injury and that the injunction is in the public interest. *Id*.

21            For these reasons, a showing of "serious questions" going to the merits in combination

22  with a balance of hardships tipped in the plaintiff's favor is not alone sufficient to warrant the

23  extraordinary remedy of a preliminary injunction. *Id*.  As will be shown, Petitioners fail to satisfy

24  all four prongs.  First, Petitioners did not demonstrate a likelihood of success on the merits, or

25  even serious questions going to the merits, based on their challenge to the City's actions under

26  California Civil Code section 1670.9(d).  Second, Petitioners failed to show that irreparable harm

27  is likely, rather than a mere possibility.  Third, Petitioners did not prove that the balance of

28  equities tips in their favor.  In fact, the balance of the equities tip in favor of the City.  Finally,

1   Petitioners did not establish that issuance of an injunction would be in the public interest.

2       **A.**    **Petitioners Have Not Shown That They Are Likely to Succeed on the Merits**

3       **1.**    **Petitioners Brought Their Petition Under An Inapplicable Statute**

4       "Judicial review of most public agency decisions is obtained by a proceeding for a writ of

5   ordinary [Code of Civil Procedure section 1085] or administrative [Code of Civil Procedure

6   section 1094.5] mandate. [Citations.] The applicable type of mandate is determined by the nature

7   of the administrative action or decision. [Citation.]" (*McGill v. Regents of the University of*

8   *California* (1996) 44 Cal.App.4th 1776, 1785, 52 Cal.Rptr.2d 466.) Typically, quasi-legislative or

9   ministerial acts are reviewed by ordinary mandate, and quasi-judicial acts are reviewed by

10  administrative mandate. *Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th

11  1175, 1196.

12      Under California Law approval of conditional use permits is administrative or

13  "adjudicatory." *Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 518.  As an

14  administrative act, Code of Civil Procedure section 1094.5 is the exclusive remedy for reviewing

15  the City's actions.

16      "The grant of a land use permit or variance is an adjudicatory act. A proceeding
    under Code of Civil Procedure section <u>1094.5 is the exclusive remedy for judicial</u>

17  <u>review of the quasi-adjudicatory administrative action of local level agencies in</u>
    <u>these circumstances.</u> (*City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713,

18  718, and fn. 2; Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 1.4, p. 5.)"
    *Saad v. City of Berkeley* (1994) 24 Cal.App.4th 1206, 1211 [Emphasis Added].

19      As shown by the Writ of Mandate filed by petitioners, neither petitioner has sought relief

20  under this statute.  (ECF No. 1-2.)    The basis for bringing this action under a different statute is

21  not addressed in the moving papers. (ECF No. 3.)  Given that there is no legal authority for

22  challenging the City's actions relating to the approval of the modifications to the conditional use

23  permits under any statute other than Section 1094.5, Petitioners will not be able to succeed on the

24  merits of the claim presented to this court.

25      **2.**    **Petitioners have Failed to Exhaust Their Judicial Remedies**

26      Under California law, "A party must exhaust judicial remedies by filing a § 1094.5

27  petition, the exclusive and established process for judicial review of an agency decision."*Doe v.*

28

1   *Regents of the Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018).  The California Supreme Court

2   held that:

3   "unless a party to a quasi-judicial proceeding challenges the agency's adverse
findings made in that proceeding, by means of a mandate action in superior court,

4   those findings are binding in later civil actions. This requirement of exhaustion of
judicial remedies is to be distinguished from the requirement of exhaustion of

5   administrative remedies. (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d
235, 241.) Exhaustion of *administrative* remedies is "a jurisdictional prerequisite to

6   resort to the courts." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280,
293.) Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid

7   giving binding "effect to the administrative agency's decision, because that decision
has achieved finality due to the aggrieved party's failure to pursue the exclusive

8   *judicial* remedy for reviewing administrative action." *Johnson v. City of Loma
Linda* (2000) 24 Cal.4th 61, 69–70.

9

10     It is undisputed that Petitioners have not filed a § 1094.5 petition which was their exclusive

11   judicial remedy. (ECF No. 1-2.)  Having failed to exhaust their judicial remedies, Petitioners

12   cannot prevail on the merits of some other type of action brought under other statutes without first

13   exhausting their judicial remedies.

14             **3.      The Motion Fails to Address the Standing of Either Petitioner to Bring**

15                       **this Action**

16     Petitioners can have standing to bring the present action based on their own beneficial

17   interest (Code of Civil Procedure section 1086) or by showing public interest standing.

18   Petitioners' Writ and Motion are silent on which type of standing is being claimed, although,

19   given the content of the motion, it appears that they are both seeking public interest standing.

20     Under California law, public interest standing is established through evidence establishing

21   four separate elements.  These are "(1) whether the corporation has shown a continuing interest in

22   or commitment to the public right being asserted; (2) whether it represents individuals who would

23   be beneficially interested in the action; (3) whether individuals who are beneficially interested

24   would find it difficult or impossible to seek vindication of their own rights; and (4) whether

25   prosecution of the action as a citizen suit by a corporation would conflict with other competing

26   legislative policies." *Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208

27   Cal.App.4th 899, 914 (*Rialto*).

28     Petitioners' Writ and Motion fail to address these elements.  The Writ attempts to address

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1  item 1 in paragraphs 11 and 12. (ECF No. 1-2.)  However, none of the other elements required for

2  standing have been proven or even discussed by the moving party.  Absent standing, Petitioners

3  cannot prevail on their claim.

4      **4.**    **Petitioners Have Not Presented Evidence of Non-Compliance Civil**

5            **Code Section 1670.9**

6      Petitioners assert that the City violated California Civil Code § 1670.9(d) in three ways

7  when it approved GEO's CUP Modifications.  Petitioners are mistaken.

8      Cal. Civ. Code § 1670.9(d) provides:

9         (d) A city, county, city and county, or public agency shall not, on and after

10         January 1, 2018, approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit for the building or reuse of

11         existing buildings by any private corporation, contractor, or vendor to house or detain noncitizens for purposes of civil immigration proceedings unless

12         the city, county, city and county, or public agency has done both of the following:

13            (1) Provided notice to the public of the proposed conveyance or

14               permitting action at least 180 days before execution of the conveyance or permit.

15            (2) Solicited and heard public comments on the proposed

16               conveyance or permit action in at least two separate meetings open to the public.

17      The City complied with the section by 1) holding at least two separate meetings that were

18  open to the public, 2) providing at least 180 days' notice to the public before executing the

19  permits, and 3) soliciting and hearing public comments on the action.

20      **a.**    <u>**The City Held Three Separate Meetings**</u>

21      Petitioners claim that the City violated Cal. Civ. Code § 1670.9(d) by failing to hold at

22  least two separate meetings open to the public.  The success of this claim depends on whether the

23  City's planning commission is a "public agency" for the statute's purposes or simply a part of the

24  City. The City believes that the latter interpretation is consistent with the Legislature's intent.

25      "The question before us involves the interpretation of a statute. '"When we interpret a

26  statute, '[o]ur fundamental task … is to determine the Legislature's intent so as to effectuate the

27  law's purpose.""" *Meza v. Portfolio Recovery Associates, LLC,* 6 Cal. 5th 844, 856 (2019) (*Meza*)

28  Based on its language, which is the first step in the analysis (*id.* at 856), the purpose of subdivision

0357629;1}
RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1   (d) is to ensure public transparency in the permitting process. To do that the statute casts a broad

2   net, encompassing cities, counties, city-and-counties, and public agencies that are not cities,

3   counties, or city-and-counties.

4         Here is where Petitioners' argument breaks down: the City's planning commission is not

5   an entity separate and apart from the City. California law provides that there is a planning *agency*

6   in each city and county. Cal. Gov. Code § 65100. The city or county must assign the planning

7   agency's functions "to a *planning department*, one or more *planning commissions*, administrative

8   bodies or hearing officers, *the legislative body itself, or any combination thereof*, as it deems

9   appropriate and necessary." *Id.*, emphasis added. Following up on that basic authority,

10   Government Code section 65101 provides insofar as pertinent, "The legislative body may create

11   one or more planning commissions each of which shall report *directly to the legislative body*. The

12   legislative body shall specify the membership of the commission or commissions. In any event,

13   each planning commission shall consist of at least five members, all of whom shall act in the

14   public interest." What is more, "A legislative body may establish for its planning agency [which

15   includes a planning commission if one is created] any rules, procedures, or standards which do not

16   conflict with state or federal laws." *Id.* § 65102. The legislative body must provide "the funds,

17   equipment, and accommodations necessary or appropriate for the work of the planning agency."

18   *Id.* § 65104.

19         The City's planning commission was established by an ordinance enacted in 2016. City of

20   McFarland Mun. Code § 2.40.010. (Req. for Judicial Notice Ex. 3.) The enabling ordinance

21   prescribes the commission's membership, terms of office, and removal. *Id.* §§ 2.40.030–.070. The

22   ordinance specifies the powers and functions of the planning commission as follows:

23       A.   To hold hearings and hear all matters as prescribed in the zoning ordinance;

24       B.   To conduct such other hearings as are provided by law, such as, but not
25   limited to, the California Environmental Quality Act and in accordance with its
    own rules and regulations;

26       C.   To report its decisions, findings and recommendations in writing to the city
27   council;

28       D.   To consider, formulate and propose surveys, maps and plans designed to
    provide for, regulate and direct the future growth, development and beautification

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

of the city in order to secure to the city and its inhabitants better sanitation, adequate and suitable parks and open spaces, better transportation facilities, improved public service of all kinds, proper location of public buildings, and to secure a permanent and comprehensive plan for the most economic, healthful and harmonious growth of the city;

E.    To have prepared and recommend the adoption of a comprehensive long-term general master plan for the physical development of the city;

F.    To make in its advisory capacity, any and all recommendations to the city council relating to the above matters, including changes or amendments to the master plan or any portion thereof. *Id.* § 2.40.090.

The City and its planning commission are one public entity. *Cf. Alcala v. City of Corcoran*, 147 Cal. App. 4th 666, 669-673 (2007) (city and its police department were one public agency for purposes of the immunity provided by Vehicle Code § 17004.7); *McNeely v. County of Sacramento*, Nos. 2:05-cv-1401-MCE-DAD & 2:05-cv-2549-MCE-DAD, 2008 WL 489893 at *5 (E.D. Cal. Feb. 20, 2008) (county sheriff's department is not separate, distinct, legal entity from the county), *aff'd* 344 F. App'x 317 (9th Cir. Aug. 26, 2009), *cert. denied*, 559 U.S. 945 (2010).

Subdivision (d)'s break-out of "public agencies," therefore, brings into the equation any independent agency that has the authority to "approve or sign a deed, instrument, or other document related to a conveyance of land or issue a permit for the building or reuse of existing buildings ...." Cal. Civ. Code § 1670.9(d). It eliminates a potential gap in coverage rather than, as Petitioners would have it, creating redundant barriers to approval.

Petitioners' claim fails because the City—the city council and its planning commission— held three separate public meetings regarding the CUP Modifications, on January 21, 2020, February 18, 2020, and April 23, 2020. Fialho Decl. ¶¶ 5, 7. Since the City of McFarland acts on behalf of all its subparts, including the planning commission, a singular entity held all three meetings, i.e., the City. For these reasons, The City held more than the required number of meetings, and this portion of § 1670.9(d) was satisfied.

Petitioners also challenge the notice for the meetings claiming that the city omitted reference to immigrants.  In arguing this issue, petitioners have failed to establish a basis upon which they can prevail.  Under the Planning and Zoning Law, a court may not set aside the actions of a legislative body based on an error or omission in a notice of public hearing, unless the court finds the error was prejudicial, the complaining party suffered substantial injury, and a

1    different result was probable had the error not occurred. (CA Government Code § 65010, subd.

2    (b).) Neither prejudice, substantial injury, nor the probability of a different result may be presumed

3    based on a showing of error alone. *Id.* and *Rialto, supra,* 208 Cal.App.4th at 919.  Here, neither

4    petitioner offered any evidence showing that the alleged errors were prejudicial, that they suffered

5    any injury resulting therefrom or that the result of the hearing would be different.   The failure of

6    proof on these issues prohibits the Court from setting aside the action of the McFarland City

7    Counsel relative to the conditional use permits pursuant to Government Code section 65010.

8                        **b.      The City Solicited and Heard Public Comments on the**

9                                 **Proposed Permits**

10            Plaintiff claims that the City restricted public participation in the meetings on the CUP

11   Modifications by imposing "egregious barriers" on public participation.  The City did not place

12   any unreasonable restrictions on public participation in any of the three meetings.

13            Cal. Civ. Code § 1670.9(d)(2) requires the city to solicit and hear public comments in

14   meetings pertaining to the proposed permit action.  California Government Code § 54954.3(a) is

15   similar, providing in part that "[e]very notice for a special meeting shall provide an opportunity for

16   members of the public to directly address the legislative body concerning any item that has been

17   described in the notice for the meeting before or during consideration of that item." California

18   Government Code § 54954.3(b)(1) states that the "legislative body of a local agency may adopt

19   reasonable regulations to ensure that the intent of subdivision (a) is carried out, including, but not

20   limited to, regulations limiting the total amount of time allocated for public testimony on

21   particular issues and for each individual speaker."

22            In *Baca v. Moreno Valley Unified School Dist.*, 936 F.Supp. 719 (C.D. Cal. 1996), the

23   defendant school district regulated its school board meetings by setting time limits for speakers

24   and providing for the removal of disruptive speakers. *Id.* at 734.  The court stated that "a school

25   board can ensure an orderly discussion and exchange of information by regulating the time, place,

26   and manner for speech at its meetings …" *Id.*  Though the present case does not involve a school

27   board or disruptive attendees, the court's reasoning regarding meeting regulations is still

28   persuasive.  The City's comment card requirements were not unduly restrictive.  Rather, this

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1    requirement was reasonably imposed for the sake of ensuring orderly discussion and exchange of

2    information.

3           The City held two in-person public meetings, one on January 21, 2020 and the other on

4    February 18, 2020. Fialho Decl. ¶ 7. The public received notice of these meetings and both

5    meetings were open for public participation. Fialho Decl. Exs. F, G. Approximately 150 to 200

6    members of the public attended the January 21 meeting, and approximately 300 members of the

7    public attended the February 18 meeting. Gonzalez Decl. ¶¶ 5, 7. Each meeting's heavy

8    attendance required outdoor overflow capacity accommodation. *Id*. Due to the large number of

9    attendees, the City required that all attendees who wished to speak fill out a comment card before

10   the meeting's commencement at 6 o'clock PM. Gonzalez Decl. ¶¶ 4, 6.

11          Petitioners further argue that the comment card system acted as an improper condition

12   precedent to attending the meeting under Cal. Gov. Code § 54953.3. This argument is misplaced

13   because §54953.3 states that "[a] member of the public shall not be required, as a condition to

14   attendance at a meeting of a legislative body of a local agency, to register his or her name, to

15   provide other information, to complete a questionnaire, or otherwise to fulfill any condition

16   precedent to his or her *attendance*." (Emphasis added.) The City imposed the comment card

17   system to effectively solicit input from attendees who wished to provide their opinions. Comment

18   cards were not required of everyone seeking to attend the meeting and were not a condition

19   precedent to attending the meeting. Rather, the comment cards existed to provide a chance for all

20   voluntary and timely comment submissions to be received. This requirement was a reasonable

21   regulation imposed for the sake of ensuring order and organization at the meetings. It would have

22   been difficult for public questions and commentary to be effectively received via a hand-raising

23   system in such a large crowd. Implementation of the comment card system allowed the meetings

24   to proceed in an orderly fashion, and no one was prevented from attending.

25          On April 23, 2020, beset by concerns over Covid-19, the City held another public meeting

26   via the Zoom teleconferencing program. Fialho Decl. Ex. B. Unbeknownst to the City, members

27   of the public claim to have experienced technical difficulties that dropped their connections or

28   prevented them from connecting to the meeting. Gonzalez Decl. ¶¶ 9,10, 12. These technical

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1   issues were not caused by and were not within the City's control.  The fact that some participants

2   may have had difficulties in viewing the meeting, public participation was not hampered.  The

3   meeting minutes state that 848 written comments were received.  Fialho Decl. Ex. B.

4           The City's actions in the first two meetings were reasonable and necessary to preserve

5   order and efficiency.  All members of the public were welcomed, accommodated, and given the

6   opportunity to make their voices heard without improper restrictions.  The City also conducted the

7   third meeting appropriately considering the need to quickly acclimate to a new online procedure.

8   For these reasons, The City's actions during the meetings did not violate the Brown Act or Cal.

9   Civ. Code § 1670.9(d)(2).

10          Even if these issues existed in the manner claimed by petitioners, they cannot obtain the

11  requested relief in this action because California Government Code section 65010 bars this court

12  from invalidating or setting aside the approval of the conditional use permits based on the

13  improper admission or rejection of evidence unless the court finds that the error was prejudicial

14  and that the party complaining suffered substantial injury from that error and that a different result

15  would have been probable if the error had not occurred. *Rialto, supra,* 208 Cal.App.4th at 919.

16  Section 65010 provides:

> 17  (b) No action, inaction, or recommendation by any public agency or its legislative
> 18  body or any of its administrative agencies or officials on any matter subject to this
>     title shall be held invalid or set aside by any court on the ground of the improper
>     admission or rejection of evidence or by reason of any error, irregularity,
> 19  informality, neglect, or omission (hereafter, error) as to any matter pertaining to
>     petitions, applications, notices, findings, records, hearings, reports,
> 20  recommendations, appeals, or any matters of procedure subject to this title, unless
>     the court finds that the error was prejudicial and that the party complaining or
> 21  appealing suffered substantial injury from that error and that a different result
>     would have been probable if the error had not occurred. There shall be no
> 22  presumption that error is prejudicial or that injury was done if the error is shown.
>     CA Gov. Code, § 65010
> 23
> 24

25          Petitioners' Writ and their motion do not claim, or submit any evidence showing, that the

26  alleged errors were prejudicial.  In fact, the evidence submitted shows that there were hundreds of

27  people who participated in the process by attending and or submitting comments. (See also the

28  Declaration of Maria Lara.)  Petitioners also failed to provide any evidence that they have suffered

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1   any injury, let alone a substantial injury, arising from the claimed errors in the City's processes.

2   Finally, petitioners do not argue, and cannot prove, that a different result would have been

3   probable if more people attended the meeting or if more comments would have been received

4   prior to the vote.   Due to this failure of proof, Section 65010 bars the relief requested by

5   petitioners in their writ of mandate.

6              c.    **The City Provided Notice to the Public at Least 180 Days**

7                    **Before Executing the Permits.**

8          Plaintiff claims that the City violated § 1670.9(d)(1) by failing to provide 180 days' notice

9   to the public before executing the CUP Modifications.  Plaintiff incorrectly asserts that the City's

10  April 23, 2020 approval of the CUP Modifications constitutes execution of the permits.

11         Petitioners confirm and admit that the City provided the initial notice of the proposed CUP

12  Modifications to the public on January 10, 2020.  Fialho Decl. ¶ 8.  The City approved the CUP

13  Modifications in the third public meeting.  The City stated in Resolutions 2020-0013 and 2020-

14  0014 that the respective CUP Permits "shall not be considered issued, executed or effective until

15  July 15, 2020."  Fialho Decl. Exs. C, D; Req. for Judicial Notice Ex. 6 & 7.).

16         "If the language of a statute is clear and there is no ambiguity, then there is no need to

17  'interpret' the language by resorting to the legislative history or other extrinsic aids."  *Church of*

18  *Scientology of California v. U.S. Dept. of Justice*, 612 F.2d 417, 421 (9th Cir. 1979).  The term

19  "execute" as used in § 1670.9(d)(1) is unambiguous. Though the McFarland City Council

20  *approved* the CUP Modifications on April 23, 2020, the permits were not to be and could not be

21  formally *executed* until July 15, 2020. (Req. for Judicial Notice, Ex. 6 & 7, Section 5.)

22         Based on the statute's unambiguous use of the word "execute," the permits were not

23  effectuated by the April 23, 2020 approval.  Rather, the permits would have been effectuated on

24  July 15, 2020: the date upon which the permits were scheduled to be formally executed.  This date

25  is well outside the statutory requirement of 180 days.  For these reasons, the City did not violate

26  the 180-day notice requirement in § 1670.9(d)(1).  GEO could not have acted upon or relied upon

27  either CUP until after July 15, 2020.

28         **B.    Petitioners Failed to Demonstrate Likelihood of Irreparable Harm**

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1   Petitioners seeking preliminary relief must "demonstrate that irreparable injury is *likely* in

2   the absence of an injunction." *Winter*, 555 U.S. 7 at 22.  "A preliminary injunction will not be

3   issued simply to prevent the possibility of some remote future injury." *Winter*, 555 U.S. 7 at 22.

4   Petitioners did not sufficiently satisfy the likelihood of irreparable harm occurring in the absence

5   of injunctive relief.

6   Their motion is supported with the declaration of Eric Lofgren who claims that he believes

7   that the transfer of detainees to and from the McFarland Facility will result in immediate and

8   irreparable harm. Lofgren Decl. ¶ 2.  This claim is only supported with models and statistics taken

9   from extrapolation from other cities and then applied in a very non-specific manner to the City of

10   McFarland without specifically accounting for the size, layout, demographics, protocols or other

11   unique qualities of the City or the facilities.  In short there is not support for the conclusion that is

12   supported by actual evidence demonstrating the type of "immediate and credible threat

13   of irreparable harm necessary to support injunctive relief." *See Goldie's Bookstore, Inc.*, 739 F.2d

14   at 466 (noting that speculative injury does not constitute irreparable injury).

15   COVID-19 is doubtlessly a dangerous virus that poses possible harm to our communities.

16   However, the possibility of detainees and staff members contracting COVID-19 remains a

17   possibility, as it is with the public at large, rather than a guarantee or a probability.  Petitioners'

18   concerns are too speculative to constitute "irreparable harm" for purposes of the *Winter* test.

19   **C.     The Balance of Equities Tips in the City's Favor**

20   The City is small, occupying just 2.67 square miles of land. Request for Judicial Notice Ex.

21   1. The U.S. Census Bureau estimated the City's population at 15,506 as of July 1, 2019. *Id.* The

22   City's residents are overwhelmingly Hispanic or Latino *Id.* Forty-eight percent of them, ages 25

23   and older, are high school graduates and only 3.7 percent have bachelor's degrees or higher. *Id.*

24   The mean household income in 2018 dollars was $33,281 and the U.S. Census Bureau reported

25   that 36.8 percent of the population lived in poverty. *Id.*

26   In fiscal year 2019–2020, the City's entire budget was $3,229,110. Declaration of Rocio

27   Mosqueda, ¶ 3.  The CUP Modifications that are the subject of this action will produce annual

28   fees for the City of approximately $611,000 to the City plus additional monetary and nonmonetary

0357629;1}

- 12 -

1  benefits to the City and its residents. *Id.* at ¶ 6 & 7.  The fiscal budget for 2020-2021 has not yet

2  been adopted, however, the City is relying on the GEO revenue contributions to account for

3  somewhere between 10 and 20 percent of the budget. *Id.* ¶ 9.  The immediate loss to the City is

4  totaling $42,392.00 per month. (*Id.* ¶ 10.)

5  　　　That contribution cannot be replaced. If the CUP Modifications are prevented from taking

6  effect, the City will experience a catastrophic shortfall in revenue and essential services to its

7  residents will have to be cut or diminished. *Id.* ¶ 10.  This will directly impact the City's residents,

8  making it more, not less, difficult to avoid real impacts to public health, such as the continued

9  provision of safe and sanitary drinking water through the City's aged water supply system and the

10  maintenance of the City's road network.

11  　　　The balance of equities favors the City. On the one hand there is the objective, verifiable

12  loss of 10 percent or more of the City's annual revenue during the pendency of the lawsuit if the

13  injunction issues, versus Petitioners' speculative claims that the public's exposure to Covid-19

14  will be increased if the injunction does not issue

15  　　　**D.　　Issuance of a Preliminary Injunction Would Not Be in the Public Interest**

16  　　　The public has more to worry about in these times than the direct threat of infection by

17  Covid-19. The pandemic's indirect consequences are likely to be just as great. The nation's

18  economy is on the brink of disaster; unemployment remains very high. Local governments like the

19  City struggle to find revenue with which to maintain public safety at a time when their economies

20  are in free fall due to declining tax revenues and increased demands on social services.

21  　　　Noncitizen detainees deserve to have a roof over their heads too. Dispersing them

22  throughout the state while keeping them in custody is a means of providing social distancing and

23  based on prevailing guidance should reduce the risk of infection.

24  　　　**E.　　If the Motion is not Denied, An Injunction Bond Must be Ordered**

25  　　　If this Court were to seriously entertain the issuance of a preliminary injunction, it should

26  require Petitioners to post a surety bond.  This is required for the issuance of a temporary

27  restraining and the issuance of a temporary injunction:

28

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1  **(c) Security.** The court may issue a preliminary injunction or a temporary
restraining order only if the movant gives security in an amount that the court
2  considers proper to pay the costs and damages sustained by any party found to have
been wrongfully enjoined or restrained. The United States, its officers, and its
3  agencies are not required to give security. Fed. Rules Civ.Proc., rule 65, 28
U.S.C.A.

4  (a) On granting an injunction, the court or judge must require an undertaking on the
part of the applicant to the effect that the applicant will pay to the party
5  enjoined any damages, not exceeding an amount to be specified, the party may
sustain by reason of the injunction, if the court finally decides that the applicant
6  was not entitled to the injunction. Within five days after the service of the
injunction, the person enjoined may object to the undertaking. If the court
7  determines that the applicant's undertaking is insufficient and a sufficient
undertaking is not filed within the time required by statute, the order granting the
8  injunction must be dissolved. Code Civ. Proc., § 529

9

10  The Court should require Petitioners to post a surety bond for not less than two years'

11  revenue that GEO Group would have provided to the City: approximately $1.2 million, plus

12  additional sums for interest and attorney fees. Decl. of Rocio Mosqueda, ¶ 6 & 7.  These are actual

13  hard money losses that will be incurred by the City if the preliminary injunction is issued.

### III.    CONCLUSION

14       For the foregoing reasons, Plaintiff has failed to make showings on all four prongs as

15  required to obtain a preliminary injunction.  As such, The City respectfully asks the court to deny

16  Plaintiff's request.

17

18

19  Dated: July 21, 2020                              LeBEAU-THELEN, LLP

20                                               By: _/s/ Andrew K. Sheffield_____
                                                      ANDREW K. SHEFFIELD, ESQ.
21                                                    BOB H. JOYCE, ESQ.
                                                      Attorneys for Defendant
22                                                    CITY OF McFARLAND

23

24

25

26

27

28

0357629;1}

RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

1 | Immigrant Legal Resources Center
v. City of McFarland
2 | USDC Case No.: 1:20-CV-00966-TLN-AC

3 | **PROOF OF SERVICE**

4 | STATE OF CALIFORNIA, COUNTY OF KERN

5 |      I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is:   5001 E.
6 | Commercenter Drive, Suite 300, Bakersfield, California 93309.   On **July 21, 2020,** I served the within **RESPONDENT CITY OF MCFARLAND'S MEMORANDUM OF POINTS AND**
7 | **AUTHORITIES IN OPPOSITION TO PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION** on the interested parties in said action:

8 |

     (X) by placing ( ) the original **(XX)** a true copy thereof enclosed in a sealed envelope(s)
9 | addressed as follows:

10 | Alexander D. Westerfield, Esq.
David C. Lee, Esq.
11 | Elizabeth Kimball Key, Esq.
Nossaman LLP
12 | 50 California Street, 34th Floor
San Francisco, CA 94111
13 | Ph: 415-398-3600
awesterfield@nossaman.com
14 | dlee@nossaman.com
ekey@nossaman.com
15 | *Attorneys for Immigrant Legal Resources Center &*
*Freedom for Immigrants*
16 |

Chanmaly Kendie Schlecht, Esq.
17 | Michael William Shonafelt, Esq.
Michael Brandon McClellan, Esq.
18 | Newmeyer and Dillion LLP
895 Dove Street, Fifth Floor
19 | Newport Beach, CA 92660
Ph: 949-854-7000; Fax: 949-854-7099
20 | kendie.schlecht@ndlf.com
michael.shonafelt@ndlf.com
21 | michael.mcclellan@ndlf.com
*Attorneys for Geo Group, Inc.*
22 |

Michael W. Kirk, PHV
23 | Charles J. Cooper, PHV
Steven J. Lindsay, PHV
24 | Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
25 | Washington, DC 20036
Ph:   202-220-9600; Fax: 202-220-9601
26 | mkirk@cooperkirk.com
ccooper@cooperkirk.com
27 | slindsay@cooperkirk.com

28 |

{00357335:1}

1

2     **(XX)   BY COURT'S CM/ECF SYSTEM** - Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

3

4     I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

5

6
                                                    */s/ Lequetta Hansen*
7                                                   LEQUETTA HANSEN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00357335;1}