NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
ALEXANDER WESTERFIELD (SBN 295676)
awesterfield@nossaman.com
ELIZABETH KEY (SBN 323544)
ekey@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:    415.398.3600
Facsimile:    415.398.2438

Attorneys for Petitioners IMMIGRANT LEGAL RESOURCE CENTER; FREEDOM FOR IMMIGRANTS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMMIGRANT LEGAL RESOURCE CENTER FREEDOM FOR IMMIGRANTS,<br><br>Petitioners,<br><br>vs.<br><br>CITY OF MCFARLAND; MCFARLAND PLANNING COMMISSION,<br><br>Respondents,<br><br>THE GEO GROUP, INC.,<br><br>Real Party in Interest. | Case No: 1:20-cv-966-TLN-AC<br><br>Assigned to: Hon. Troy L. Nunley<br><br>**PETITIONERS' MEMORANDUM OF POINTS & AUTHORITIES IN REPLY TO ORDER TO SHOW CAUSE**<br><br>Filed: June 30, 2020<br>Trial: No date set |

# TABLE OF CONTENTS

I.      INTRODUCTION .............................................................................................1

II.     ARGUMENT...................................................................................................1

    A.    The City's procedural arguments fail. ......................................................1

    B.    Section 1670.9(d) is constitutional. ..........................................................2

        1.    The statute does not directly regulate the federal government. .............2

        2.    The statute does not discriminate against the federal government. .......4

    C.    Respondents violated Section 1670.9(d).......................................................7

    D.    The remaining factors favor a preliminary injunction. ...............................9

III.    CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A Local & Reg'l Monitor v. City of Los Angeles*,
  12 Cal. App. 4th 1773 (1993) ...........................................................................................7 n.8

*Alcala v. City of Corcoran*,
  147 Cal. App. 4th 666 (2007) ............................................................................................7 n.8

*Bostock v. Clayton Cty.*,
  140 S. Ct. 1731 (2020).............................................................................................................5

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)..................................................................................................................8

*Davis v. Mich. Dep't of Treas.*,
  489 U.S. 803 (1989)..............................................................................................................4, 5

*Dawson v. Steager*,
  139 S. Ct. 698 (2019)................................................................................................................5

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)..................................................................................................................5

*Hancock v. Train*,
  426 U.S. 167 (1976)..................................................................................................................3

*Johnson v. Maryland*,
  254 U.S. 51 (1920)..........................................................................................................3, 3 n.3

*Killian v. City & Cty. of San Francisco*,
  77 Cal.App.3d 1 (1978) ......................................................................................................7 n.8

*Lopez v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) .............................................................................................2, 9

*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) ..................................................................................................9

*Mayo v. United States*,
  319 U.S. 441 (1943)..................................................................................................................3

*McNeely v. Cty. of Sacramento*,
  2008 WL 489893 (E.D. Cal. Feb. 20, 2008).......................................................................7 n.8

*Nielsen Constr. Co. v. Int'l Iron Prod.*,
  18 Cal. App. 4th 863 (1993) ..............................................................................................8 n.9

*North Dakota v. United States*,
    495 U.S. 423 (1990) .................................................................................................3, 4, 5, 6, 7

*Pich v. Lightbourne*,
    221 Cal. App. 4th 480, 493 (2013) ............................................................................................2

*Roccaforte v. City of San Diego*,
    89 Cal.App.3d 877 (1979) ..................................................................................................7 n.8

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) .................................................................................................10

*Saad v. City of Berkeley*,
    24 Cal. App. 4th 1206 (1994) ....................................................................................................1

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020) .....................................................................................................2

*United Ass'n of Journeymen v. City & Cty. of San Francisco*,
    32 Cal.App.4th 751 (1995) .................................................................................................7 n.8

*United States v. California*,
    921 F.3d 865 (9th Cir. 2019) ...........................................................................................3, 4, 5, 6

*United States v. California*,
    314 F. Supp. 3d 1077 (E.D. Cal. 2018) ................................................................................7 n.7

United States v. California,
    2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) .......................................................................7 n.7

*United States v. Haft*,
    2020 WL 3412195 (D. Or. June 22, 2020) ..............................................................................10

*USPS v. City of Berkeley*,
    2018 WL 2188853 (N.D. Cal. May 14, 2018) ...........................................................................4

*Zepeda Rivas v. Jennings*,
    2020 WL 3055449 (N.D. Cal. June 9, 2020) .......................................................................9, 10

**Constitutions**

Cal. Const. art. I, § 3 ..............................................................................................................................7

**Statutes**

Cal. Code Civ. P. § 1094.5 ....................................................................................................................1

Cal. Civ. Code § 4 .................................................................................................................................7

Cal. Civ. Code § 1670.9 ............................................................................................................ *passim*

Cal. Gov't Code § 54951 ...................................................................................................................7

Cal. Gov't Code §§ 54953 ................................................................................................................8

Cal. Gov't Code § 54953.3 ...............................................................................................................8

Cal. Gov't Code § 54954.3 ...............................................................................................................8

Cal. Gov't Code § 65010(b)........................................................................................................2 n.1

Cal. Penal Code § 5003.1.................................................................................................................6

Cal. Penal Code § 9501....................................................................................................................6

Cal. Penal Code § 9505....................................................................................................................6

**Municipal Codes**

McFarland Mun. Code § 2.10.010...................................................................................................8

McFarland Mun. Code § 17.150.010...............................................................................................4

McFarland Mun. Code § 17.160.030...............................................................................................4

McFarland Mun. Code § 17.160.040...............................................................................................8

McFarland Mun. Code § 17.160.050...............................................................................................8

**Other Authorities**

Assem. Bill No. 32 (2019-2020 Reg. Sess.) ...............................................................................6 n.4

## I. INTRODUCTION

On July 14, this Court granted Petitioners' Ex Parte Motion for a Temporary Restraining Order (ECF No. 3), holding that the "grave, unprecedented, and rapidly evolving risks to the public health" justified an order barring Respondents from issuing the Proposed Modifications, which would permit the immediate transfer of immigration detainees into two McFarland facilities, and GEO from receiving or housing detainees at those facilities. ECF No. 8 (the "Order"). The Court likewise ordered Respondents and GEO to show cause why, given the "serious questions" as to whether the City's approval of the Proposed Modifications was legal under California Civil Code section 1670.9(d), a preliminary injunction should not issue enjoining the Proposed Modifications, and actions taken in reliance on them, "pending resolution of this lawsuit." Order at 7–9. Neither Respondents nor GEO have shown such cause. Instead, they urge this Court to read Section 1670.9(d) without regard to the California Constitution, to adopt a limitless interpretation of the federal Supremacy Clause, and to ignore the enormous public health risks created by the pandemic.

## II. ARGUMENT

### A. The City's procedural arguments fail.

The City contends that two procedural defects in this case leave Petitioners unable to succeed on the merits. Each of these arguments is misplaced and this Court should reject them.

**First**, the City argues that, because the Proposed Modifications concern a land-use permit, challenges to the Proposed Modifications may only be brought under Code of Civil Procedure section 1094.5, not section 1085. City Opp. at 3. As the City's own authority recognizes, however, Section 1094.5 is appropriate only when petitioners challenge the manner in which a public agency has exercised discretion, and 1094.5 review focuses on whether an administrative record adequately supports an agency's decision. *See Saad v. City of Berkeley*, 24 Cal. App. 4th 1206, 1211–12 (1994); Cal. Code Civ. P. § 1094.5(a). Petitioners offer no such challenge here. Rather, Petitioners allege that the City violated *ministerial* duties imposed by Civil Code section 1670.9(d), which imposes *mandatory* prerequisites to permitting decisions like the Proposed Modifications. *See* Cal. Civ. Code § 1670.9(d) ("shall not . . . approve . . . unless"). Code of Civil Procedure section 1085, which concerns "statutory dut[ies]" that "*require . . .* that a particular action be taken or

not taken," is the correct vehicle for this case, *Pich v. Lightbourne*, 221 Cal. App. 4th 480, 493 (2013).[1]

**Second**, the City argues that Petitioners lack standing. City Opp. at 4–5. The City is incorrect. "An organization has standing to sue on its own behalf when it suffers both a diversion of its resources and a frustration of its mission." *Sierra Club v. Trump*, 963 F.3d 874, 884 (9th Cir. 2020) (quotation marks omitted). Petitioners attested to both in their sworn, verified petition initiating this action. Petitioner ILRC "works . . . to ensure that immigrants have a voice on issues that impact them the most, such as immigration detention." ECF No. 1-2 at 4. Petitioner FFI "monitors conditions in immigration detention facilities nationwide" *Id.* at 5. And both Petitioners "would necessarily divert considerable organizational resources to working with individuals detained in McFarland." *Id.* at 4–5. Petitioners therefore have Article III standing.[2]

**B.     Section 1670.9(d) is constitutional.**

GEO argues that Petitioners cannot succeed in this case because Section 1670.9(d) violates the intergovernmental immunity doctrine implied by the federal Supremacy Clause. GEO Opp. at 12–18. This is not so. At this stage, Petitioners must show only "serious questions going to the merits." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Nonetheless, as discussed below, GEO's intergovernmental immunity arguments misread the Constitution as granting it—a contractor—near-total power over the state of California.

**1.     The statute does not directly regulate the federal government.**

GEO argues that Section 1670.9(d) violates intergovernmental immunity by directly regulating federal operations. *See* GEO Opp. at 16–18. This argument fails twice over.

**First**, GEO applies too sensitive a standard, effectively arguing that any state permitting process affecting a federal contractor impermissibly regulates the federal government. The view

---

[1] Because Petitioners challenge the City's failure to follow *Civil Code* section 1670.9(d), not Respondents' exercise of discretion, the City's arguments rooted in Government Code section 65010 are misplaced. First, that statute applies only to the substance of Government Code Title 7. Cal. Gov't Code § 65010(b) ("subject to this title"). Second, it addresses only the discretionary functions of planning commissions, not ministerial duties like those Section 1670.9(d) imposes. *Id.*

[2] Even if the Court accepts the City's procedural arguments, neither determines Petitioners' ultimate likelihood of success, as the associated remedies are dismissal with leave to amend.

"that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional," however, "has now been thoroughly repudiated," and laws that "make it more costly for the Government to do its business" raise no constitutional problems per se. *North Dakota v. United States*, 495 U.S. 423, 434-35 (1990) (plurality) (quotation marks omitted). Instead, only laws which "direct[ly] interfere[]  with the federal government" are invalid. *Id.* at 437. State permitting laws only violate the intergovernmental immunity doctrine by disrupting federal officials, employees, or facilities *in the course of their employment or operation*. *See, e.g.*, *Hancock v. Train*, 426 U.S. 167 (1976) (federal facilities immune from state pollution laws); *Mayo v. United States*, 319 U.S. 441 (1943) (Secretary of Agriculture immune from state fees on fertilizer sales); *Johnson v. Maryland*, 254 U.S. 51 (1920) (USPS employees may drive mail trucks without licenses).[3] And as the Ninth Circuit recently held, such disruption does not necessarily suffice. *United States v. California*, 921 F.3d 865, 884 (9th Cir. 2019) (state may inspect federal detention facilities).

Section 1670.9(d) does not come close to meeting this standard, as it is far too remote from the federal government to directly regulate it. The statute directly regulates only municipalities and public agencies who issue permits to federal contractors, not the federal government or its contractors. Nor can Section 1670.9(d) disrupt federal operations: it is a one-time permitting statute that applies only before a contractor operates a federal facility. Indeed, GEO has offered no evidence that Section 1670.9(d) affects any federal or federal-adjacent interest aside from its own revenues. That is not enough—not nearly—to immunize GEO from California law.

**Second**, GEO's direct regulation argument cannot distinguish between Section 1670.9(d) and regulations it concedes to be valid. To challenge Section 1670.9(d), GEO states that permits for the Proposed Modifications are "necessary for a private contractor to carry out a federal oper-

---

[3] *Johnson* illustrates the implausibility of GEO's standard. In that case, a mail carrier was arrested for driving without a license "while driving a government motor truck in the transportation of mail." *Id.* at 55. The Court held him immune "from state control *in the performance of [his] duties*" so as not to disrupt his "specific attempt to obey orders" of the government. *Id.* at 57. The case does *not* immunize mail carriers from state licensing requirements while driving to work, from work, or to submit a federal employment application. GEO, however, adopts this interpretation of *Johnson* by arguing that Section 1670.9(d), which lays out a process GEO must follow *before its federal operations commence*, interferes with "attempt[s] to obey orders." GEO Opp. at 18.

ation." GEO Opp. at 18. But that statute does not require GEO to obtain a permit, it merely specifies what Respondents must do before issuing one. The requirement to obtain a conditional use permit stems from the *City's* laws, not the *state's*. McFarland Mun. Code §§ 17.150.010, 17.160.030(A)(6). And like Section 1670.9(d), City law requires notice and public hearings for such permitting decisions, the same "burdens and procedures" GEO complains of here. *See id.* § 17.160.030(B); GEO Opp. at 18. Unlike Section 1670.9(d), however, City law allows Respondents to *deny any permit*—conditional use permits "may be issued"—without regard to the effect on federal interests. McFarland Mun. Code §17.160.030(A). Yet GEO has not challenged Respondents' zoning authority, nor could it hope to do so: "[u]nder [such a] theory, it would be virtually impossible to impose any local regulation . . . on a group of constituents that happened to include the federal government or those with whom it deals," *USPS v. City of Berkeley*, 2018 WL 2188853, at *4 (N.D. Cal. May 14, 2018) (upholding zoning ordinance limiting purchasers of USPS-owned building from intergovernmental immunity challenge). GEO's theory of direct regulation here, however, is indistinguishable from that argument, and this Court should reject it.

### 2.     The statute does not discriminate against the federal government.

GEO argues that, because Section 1670.9(d) concerns immigration detention, it discriminates against the federal government. GEO Opp. at 12–14. These arguments miss their mark.

**First**, nondiscrimination requires only that a law "is imposed on some basis unrelated to the object's status as a Government contractor." *North Dakota*, 495 U.S. at 438 (plurality). Laws cannot discriminate if there are "significant differences" between affected federal contractors and unaffected entities. *Davis v. Mich. Dep't of Treas.*, 489 U.S. 803, 816 (1989). That is, for intergovernmental immunity, a law does not discriminate *even if it affects only federal contractors* so long as that law affects them for reasons other than their relationship to the federal government. *See California*, 921 F.3d 865 at 885 (upholding state law affecting only federal detention facilities).

The state's interest in Section 1670.9(d)—encouraging public participation in decisions concerning private immigration detention facilities—is incidental to the relationship that private immigration detention facilities enjoy with the federal government. Rather, as Petitioners have explained as amici in the Related Case, *see* Key Decl. Ex. 3 at 8–19, private immigration detention

poses a suite of unique *local* concerns—good governance, community safety, public trust, and economic development—untethered to facility operators' "status as [*federal*] contractor[s]," *North Dakota*, 495 U.S. at 438 (plurality). Given these concerns, there are "significant differences" between the entities affected by Section 1670.9(d)—private immigration detention facility contractors *and municipalities that issue permits*—and entities that are not, *Davis*, 489 U.S. at 816.

Although GEO appears to argue that the state's interest is "simply irrelevant" to discrimination analyses, GEO Opp. at 13, this is incorrect. Whether the state has an articulable interest in Section 1670.9(d) unrelated to private immigration detention facilities' relationship to the federal government—as discussed above, it does—is crucial to determine whether that statute is discriminatory—which it is not. The state's interest becomes "simply irrelevant"—that is, it cannot salvage a statute—only if a statute *actually discriminates*. *Dawson v. Steager*, 139 S. Ct. 698, 704 (2019) ("[T]he State's interest in adopting *the discriminatory [law]* . . . is simply irrelevant.") (quotation marks omitted; emphasis added). Nor can GEO tarnish Section 1670.9(d) with stray remarks from its legislative history concerning the current federal administration, GEO Opp. 3–4. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568–69 (2005). "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020).

**Second**, even if this Court subjects Section 1670.9(d) to an intergovernmental discrimination analysis, the law does not discriminate as a practical matter. GEO's discrimination standard rests on a sleight of hand with *United States v. California*. That case only suggests that state statutes concerning immigration detention *might trigger* intergovernmental immunity analysis. *Id.* at 884. *California* does not hold, as GEO suggests, that such statutes necessarily *violate* intergovernmental immunity—indeed, it upheld one facing exactly that challenge. *Id.* Specifically, *California* upheld a state law empowering the state to inspect the *federal government's own* immigration detention facilities, holding that the law did not discriminate because it was "duplicative of the inspection requirements otherwise imposed on California's state and local detention facilities." *Id.* at 885.

No court applies the formalistic test that GEO offers. Instead, "a functional approach" determines whether a statute has impermissibly discriminated against the federal government. *North*

PETITIONERS' REPLY RE OSC
57593879.v1

*Dakota*, 495 U.S. 423 at 435 (plurality opinion). This analysis turns on whether a statute "treats someone else better than it treats" the federal government or its affiliates, that is, whether it regulates the federal government more or less stringently than other entities when the whole of state law is taken into account. *Id.* at 438 (plurality opinion) (quotation marks omitted) (rejecting "narrow" analysis). If, despite the statute, the federal government retains "an option that no other [party] in the State enjoys," it "does not violate any federal immunity." *Id.* at 448 (Scalia, J., concurring in judgment). Statutes cannot discriminate against the federal government by imposing lesser or equal burdens than other laws impose on the state itself. *California*, 921 F.3d at 865.

Held to the proper standard, Section 1670.9(d) does not discriminate against the federal government. Other provisions of California law, enacted in 2019 as part of Assembly Bill 32 ("AB 32") restrict the state's relationship with private detention contractors more than Section 1670.9(d) affects the federal government. As of 2020, AB 32 prohibits the state from "enter[ing] into" or "renew[ing] an existing contract" with any private detention contractor *except* to comply with a "court-ordered population cap." Cal. Penal Code § 5003.1(a), (b), (e). This echoes a more general prohibition, which *does* affect federal contractors, found elsewhere in AB 32: "a person shall not operate a private detention facility" unless such operation is pursuant to a contract in effect before 2020 or a court-ordered population cap. *Id.* §§ 9501, 9505.[4] The *state*, however, is subject to a further restriction: as of 2028, it may not incarcerate *any* person in a private detention facility *without exception*, regardless of any contract's effective date. *Id.* § 5003.1(c). This restriction has no effect whatsoever on the federal government, which may continue to work with private detention contractors beyond 2028 pursuant to contracts in effect before 2020.

Overall, then, California law affects the *state's* relationships with private detention contractors more than the federal government's. Between now and 2028, state contractors may only house detainees pursuant to existing contracts or a court overcrowding order. And after 2028, state

---

[4] GEO has also sued to invalidate Penal Code 9501 on intergovernmental immunity grounds, and its preliminary injunction motion is pending. *See generally* Key Decl. Ex. 1. As with Section 1670.9(d), no court has yet interpreted any provision of AB 32. Petitioners' argument, however, does not turn on AB 32's constitutionality. Even if GEO's suit is successful, only the *state's* relationships with private detention contractors will be limited, by Penal Code 5003.1. *See* Assem. Bill No. 32 (2019-2020 Reg. Sess.) § 3 (severability provision).

contractors may not house detainees at all.[5] *Federal* contractors, however, may continue to house detainees well after 2028,[6] and new facilities pursuant to existing contracts require only the notice and hearing requirements of Section 1670.9(d), not the more onerous process of a court order. The federal government thus, overall, has "an option that no other [party] in the State enjoys," *North Dakota*, 495 U.S. at 448 (Scalia, J., concurring in judgment): its contractors may house detainees *without* the compulsion of a court order, and its contractors may continue to house detainees after 2028. Section 1670.9(d) thus "does not violate any federal immunity." *Id.*[7]

### C. Respondents violated Section 1670.9(d).

Respondents and GEO urge the Court to interpret Section 1670.9(d) against the state constitution, City law, and the state's laws on public participation. The Court should decline to do so.

**First**, Section 1670.9(d), which applies to "*A* city, county, city and county, *or* public agency" applies independently to the City Council and to the Planning Commission. This is apparent from its use of the indefinite "a" and disjunctive "or." Further, as a statute "further[ing] the people's right of access" to government, Section 1670.9(d) "shall be broadly construed." Cal. Const. art I, § 3. Neither Respondents nor GEO grapple with this provision or dispute that it applies to Section 1670.9(d). Instead, Respondents and GEO offer several cases to establish that the City and its Planning Commission are a single entity, but not one reaches this holding while interpreting a statute related to "the people's right of access."[8] Given the constitutional command to interpret such statutes "broadly," that distinction matters. *See also* Cal. Civ. Code § 4. Further, the Legislature "knew how" to treat cities and commissions as one entity, *see* Cal. Gov't Code § 54951, "[b]ut

---

[5] AB 32 also contains other exceptions for the state not relevant to *Section 1670.9(d)'s* constitutionality, as they have no federal analogue. *See generally* Key Decl. Ex. 2 at 13–16.

[6] Indeed, GEO's federal contract underlying the Proposed Modifications, which it entered into in December 2019, will not expire until December 2034. Related Case ECF No. 16-1 at 3.

[7] Neither *United States v. California*, 2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) nor *United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018) apply here. Both concerned state statutes that burdened federal operations, and no other statute similarly burdened others in the state.

[8] These cases are: *McNeely v. Cty. of Sacramento*, 2008 WL 489893 (E.D. Cal. Feb. 20, 2008) (42 U.S.C. § 1983); *Alcala v. City of Corcoran*, 147 Cal. App. 4th 666 (2007) (Vehicle Code); *United Ass'n of Journeymen v. City & Cty. of San Francisco*, 32 Cal.App.4th 751 (1995) (salary ordinance); *A Local & Reg'l Monitor v. City of Los Angeles*, 12 Cal. App. 4th 1773 (1993) (CEQA); *Roccaforte v. City of San Diego*, 89 Cal.App.3d 877 (1979) (employment agreement); *Killian v. City & Cty. of San Francisco*, 77 Cal.App.3d 1 (1978) (estoppel).

it did not," *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994). Finally, despite GEO's argument to the contrary, GEO Opp. at 9, the City Council and Planning Commission act independently as to conditional use permits. City law does not limit City Council review to the record before the Planning Commission, *see* McFarland Mun. Code § 17.160.040, and the City Council did not limit itself to that record here, *see* ECF No. 3-2 at 33–36. This independence reinforces that *each* entity must comply with Section 1670.9(d).

**Second**, City law does not distinguish between the approval and execution of a conditional use permit. *See* McFarland Mun. Code § 17.160.050. City law—on this point, a more authoritative source than *Black's*, *see* GEO Opp. at 10[9]—further provides that City documents are "[e]xecut[ed]" when "signed by the mayor." McFarland Mun. Code § 2.10.010. The resolutions approving the Proposed Modifications were signed by the mayor on April 23. *See* ECF No. 3-2 at 33, 39–45. The Proposed Modifications were thus "executed" under Section 1670.9(d), which must be "broadly construed," on that date, less than 180 days after City Council's public notice.

**Third**, Respondents did not properly "solicit[] and hear[] public comments" in meetings "open to the public." Neither Respondents nor GEO dispute that this provision of Section 1670.9(d) requires at least the level of public participation as the Brown Act. This Act requires that public meetings (1) be open to "all persons," (2) allow attendees to "directly address" the public body, and (3) not impose "condition[s] precedent" to participation. *See* Cal. Gov't Code §§ 54953(a), 54953.3, 54954.3(a). Neither Respondents nor GEO refute Petitioners' evidence that the April 23 City Council meeting was not open to "all persons": videoconference attendance was capped at 100 and the dial-in number was not reliable. ECF No. 3-2 at 32, 151. Nor do they refute Petitioners' evidence that attendees of the April 23 City Council meeting could not "directly address" the public body. *Id.* at 154. Instead, GEO cites the limited public participation in that meeting—seven general comments and nineteen comments specific to the Proposed Modifications—as evidence that the City's restrictions had no effect. GEO Opp. at 11. GEO has it backwards: this

---

[9] *Nielsen Constr. Co. v. Int'l Iron Prod.*, 18 Cal. App. 4th 863, 865 (1993), on which GEO relies to interpret "execute," does not address a statute concerning "the people's right of access," and is therefore irrelevant here.

1  shows that impediments to public participation *were effective*, not that public participation was
2  *unimpeded*. Indeed, nearly two and three hundred members of the public respectively attended the
3  January and February Planning Commission meetings *on the same subject*. ECF No 3-2 at 143,
4  147. This sharp decline in apparent attendance suggests—strongly—that members of the public
5  were dissuaded or prevented from participating in the April 23 City Council meeting, and certainly
6  does not show that Respondents "solicited and heard" comments in a meeting "open to the public."
7  Finally, neither GEO nor Respondents refute Petitioners' evidence that City staff imposed "condi-
8  tion[s] precedent" on public comment at both Planning Commission meetings. *Id.* at 143, 147.

9        Petitioners' case rests on a "reasonable interpretation" of Section 1670.9(d), Order at 6,
10  and on ample supporting evidence. This is more than enough to raise "serious questions" on the
11  merits, *Lopez*, 680 F.3d at 1072, and this Court should grant a preliminary injunction.

12        **D.**      **The remaining factors favor a preliminary injunction.**

13        "Faced with such a conflict between financial concerns and preventable human suffering,
14  we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor."
15  *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). To show that approval of the Proposed
16  Modifications and the ensuing detainee transfers would result in "preventable human suffering,"
17  Petitioners have offered government statistics, public health advisories, and expert testimony from
18  an epidemiologist. This simply confirms what this Court already knows: "the COVID-19 pandemic
19  poses grave, unprecedented, and rapidly evolving risks to the public health, and it is in the public
20  interest to reduce those risks as much possible." Order at 7. COVID-19 presents especially severe
21  risks in detention facilities given "the well-known 'tinderbox' risk of jail epidemics." *Zepeda Rivas*
22  *v. Jennings*, 2020 WL 3055449, at *1 (N.D. Cal. June 9, 2020). Likewise, ICE, which retains
23  authority over which prisoners are transferred to GEO facilities and when, ECF No. 20-2 ¶ 11,
24  "has shown disinterest and a lack of dexterity in adjusting its conduct to respond to a global crisis."
25  *Id.* at *2. And, as of today, Kern County remains on the state Department of Public Health's watch-
26  list in part because of transmission in prisons. Key Decl. Ex. 4.

27        Despite the overwhelming evidence that detention facilities and detainee transfers pose
28  significant public health threats during this pandemic, Respondents and GEO dismiss Petitioners'

concerns as "speculative," and insufficient to outweigh their financial interests. Both contentions are absurd. To pick but one example, this Court and courts around the country have suspended jury trials—an unambiguous constitutional right—to prevent the "speculative" harm of future transmission. GEO further claims that its safety protocols will effectively stem the spread of COVID-19 in the Central Valley and Golden State facilities. These claims, however are based only on GEO's *plans* for the facilities, ECF No. 20-1, and on the experience of a *Texas facility's* administrator, ECF No. 20-2. They do not establish that GEO understands how to prevent and contain COVID-19 outbreaks. To highlight two shortcomings: first, GEO's testing is limited to "[s]ymptomatic detainees." ECF No. 21-1 ¶ 26. As is now widely understood, however, "[i]f you are waiting for symptoms to emerge before you do the testing, you are getting a false picture of what is going on." *United States v. Haft*, 2020 WL 3412195, at *3 (D. Or. June 22, 2020) (quotation marks omitted). Second, GEO cites ICE directives minimizing detainee intakes. ECF No. 20-2 ¶ 11. Those directives, however, cannot be relevant to *new, currently unoccupied facilities*.

Respondents' and GEO's financial interests do not outweigh these risks. There are no legitimate interests in illegally approved permits. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). To the extent that an injunction affects ICE's interests in distancing its detainees, it cannot vindicate those interests by transferring them to illegally approved facilities. And in response to the pandemic, courts around the country have issued more intrusive remedies, "[i]ndeed, many district courts throughout the Ninth Circuit have ordered the release of immigration detainees during the Covid-19 pandemic." *Zepeda Rivas*, 2020 WL 3055449, at *5 (collecting cases). Petitioners ask only that this Court continue to protect the public health by preserving the status quo.

### III.    CONCLUSION

Neither Respondents nor GEO have shown cause why the Court should not extend the temporary restraining order into a preliminary injunction. The Court should accordingly enjoin Respondents from issuing, approving, or making effective the Proposed Modifications, and should enjoin GEO from housing any detainees in reliance on the Proposed Modifications, for the duration of this case.

| | |
|---|---|
| Date:   July 24, 2020 | NOSSAMAN LLP<br>DAVID C. LEE<br>ALEXANDER WESTERFIELD<br>ELIZABETH KEY |
| | By: /s/ Alexander Westerfield<br>     Alexander Westerfield |
| | Attorneys for Petitioners IMMIGRANT LEGAL RESOURCE CENTER; FREEDOM FOR IMMIGRANTS |